UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PABLO ARNULFO PENA APODACA,<br><br>Defendant. | No. 1:16-cr-00164-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT APODACA'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. Nos. 34, 36) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Pablo Arnulfo Pena Apodaca. (Doc. Nos. 34, 36.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On April 17, 2017, defendant Apodaca entered a plea of guilty to Count One of the indictment in this case charging him with possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. Nos. 1, 12, 20.) On February 5, 2018, the court sentenced defendant to a term of imprisonment of 78 months in the custody of the U.S. Bureau of Prisons ("BOP"). (Doc. Nos. 31, 33.) The court also imposed the mandatory $100.00 special assessment. (Doc. No. 33 at 3.)

1

Defendant is currently serving his sentence at Federal Medical Center, Fort Worth ("FMC Fort Worth") in Fort Worth, Texas. (Doc. Nos. 43 at 3; 43-1 at 2.) Before his transfer to FMC Fort Worth on February 23, 2021, defendant was incarcerated at Correctional Institution Reeves I/II ("CI Reeves I/II") in Pecos, Texas. (Doc. No. 43 at 3 n. 1.) As of the date of this order, defendant Apodaca has served approximately 57 months, or 73% of his full custodial 78-month sentence. (Doc. Nos. 43 at 3; 43-1 at 3.) Accounting for good time credit, his projected release date is March 27, 2022. (Doc. No. 43-1 at 2.)

On December 4, 2020, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 34.) The court then referred defendant's motion to the Federal Defender's Office. (Doc. No. 35.) On February 4, 2021, appointed counsel filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on behalf of defendant Apodaca. (Doc. No. 36.) The government filed its opposition to the pending motion on March 8, 2021, and defendant filed a reply thereto on March 22, 2021. (Doc. Nos. 43, 48.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

/////

/////

/////

/////

upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of*

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

---

*Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *Aruda*, 2021 WL 1307884, at *2.

defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United*

States v. Van Sickle, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.    Administrative Exhaustion**

Defendant asserts, and the government does not dispute, that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 36 at 2; 43 at 4.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession and turn to the merits of defendant's motion.

**B.    Extraordinary and Compelling Reasons**

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate

release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda,* U.S.S.G. § 1B1.13 may inform its determination but this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of

deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

In support of his motion, defendant argues that extraordinary and compelling reasons warranting the reduction of his custodial sentence exist because: (1) he suffers from health conditions that, according to the Centers for Disease Control and Prevention ("CDC"), place him at a high risk of severe illness from COVID-19, and (2) he is currently incarcerated at FMC Fort Worth, where fourteen inmates have previously died from COVID-19. (Doc. Nos. 36 at 2; 48 at 4–5.) In particular, defendant asserts that he has a body mass index (BMI) of 33.1 and he suffers from hypertension, both of which he contends place him at an increased risk of suffering severe illness from COVID-19 based on CDC guidance identifying those medical conditions as risk factors. (Doc. 36 at 3–6.) Defendant Apodaca also asserts that he suffers from latent tuberculosis and cites to scientific research from San Diego State University to support his argument that his latent tuberculosis not only places him at an increased risk of suffering severe illness from COVID-19 but also increases the risk of his transmitting both COVID-19 and tuberculosis to other inmates. (*Id.* at 6–7.) Further, defendant emphasizes that COVID-19 has spread in

/////

/////

---

[4] Here, however, because defendant Apodaca is only 45 years old (Doc. No. 20 at 2), his age and age-related factors do not play a role in consideration of his pending motion.

8

numerous BOP facilities, leading to both inmates and staff testing positive for COVID-19.[5] (*Id.* at 9–10.) Accordingly, defendant argues that his imprisonment "combined with having risk factors for serious illness or death from COVID-1[9]" constitute extraordinary and compelling reasons that warrant his compassionate release. (*Id.* at 10.)

In its opposition to the pending motion, the government argues that defendant Apodaca failed to carry his burden of establishing his eligibility for compassionate release because the mere existence of COVID-19 in society or in the correctional institution where he is imprisoned does not "substantially diminish[] [defendant] Apodaca's ability to provide self-care within the environment of a correctional facility [or] create[] a health threat from which he . . . is not expected to recover." (Doc. No. 43 at 7 (internal quotations omitted).) The government disputes the severity of defendant's latent tuberculosis, noting that defendant's x-ray records show "no radiographic evidence for an acute cardiopulmonary process," and emphasizes that in any event, latent tuberculosis is not a CDC-recognized risk factor for suffering severe illness from COVID-19. (*Id.* at 8) (citing Doc. No. 44 at 43—sealed.) While the government does not dispute that defendant Apodaca suffers from primary hypertension and has a BMI exceeding 30, both of which may place him at higher risk of suffering severe illness if he were to contract COVID-19, it asserts that defendant's "conditions have been monitored and treated throughout his imprisonment." (*Id.* at 8–9.) The government also notes that FMC Fort Worth has "substantially stemmed the spread of COVID-19 in its facility" and that the BOP has begun vaccinating both staff and inmates. (*Id.*) Thus, the government avers that because defendant's health conditions are being monitored as needed by prison medical staff, defendant Apodaca has not established that he is entitled to compassionate release.

In his reply, defendant Apodaca argues that his ability to provide self-care has been substantially diminished because he "cannot properly distance and protect himself in this large,

---

[5] Defendant also asserts that he is unable to provide self-care during this pandemic due to the conditions of his confinement at CI Reeves I/II. (Doc. No. 36 at 9–10.) However, because defendant has since been transferred to FMC Fort Worth, the court need not address defendant's arguments with regard to the conditions he allegedly encountered while he was incarcerated at CI Reeves I/II.

crowded penal facility [FMC Fort Worth]." (Doc. No. 48 at 5.) Defendant emphasizes that fourteen inmates at FMC Fort Worth have died from COVID-19, and that the institution has two staff members who tested positive for COVID-19 at the time defendant filed his reply in support of the pending motion. (*Id.* at 4–5.) Defendant additionally argues that the "possibility that [he] may have the option to receive a vaccine at an unspecified later date in the future does not disarm the very real threat to [him] in the present posed by [COVID-19]." (*Id.*) In particular, defendant notes that although the BOP has begun offering COVID-19 vaccines to staff and inmates, "[t]he government cannot point to an actual date when even a first shot of the multi-step vaccines will be available to [him], much less the complete vaccination regimen." (*Id.* at 6.) Accordingly, defendant argues that his inability to provide self-care for his medical conditions constitute extraordinary and compelling circumstances that are unaffected by his potential future access to a COVID-19 vaccine, such that he is entitled to immediate compassionate release. (*Id.* at 8.)

It is undisputed that according to the CDC, "[a]dults of any age" who have certain medical conditions, including primary hypertension and obesity with a BMI of 30 or higher, "can be more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 31, 2021); *Clinical Questions about COVID-19: Questions and Answers, "Patients with Hypertension,"* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html#Patients-with-Hypertension (last updated Mar. 4, 2021); (Doc. Nos. 36 at 3; 43 at 8). The court finds that the medical records submitted by defendant and the government establish that defendant has a BMI exceeding 30 and a diagnosis of hypertension. (Doc. Nos. 40 at 1–2—sealed; 44 at 9, 14–26, 33—sealed.) Defendant has shown that because he suffers from these medical conditions, he is at an increased risk for suffering severe illness if he were to contract COVID-19.

It is also undisputed that the CDC does not recognize individuals with latent tuberculosis as having an increased risk of suffering severe illness from COVID-19. *See People at Increased Risk*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last updated Apr. 20, 2021). However, even if, as

defendant argues, individuals with latent tuberculosis are at a higher risk of suffering severe illness from COVID-19, defendant has not shown or even argued that FMC Fort Worth is unable to monitor and provide adequate medical care for his medical conditions. *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release.") (internal quotation marks and citation omitted); *see also United States v. McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) (relevant questions include the adequacy of the care and treatment being provided to the defendant in BOP given his pre-existing conditions and concluding there was no evidence that the circumstances surrounding his health or treatment were extraordinary or compelling). Notably, defendant does not dispute that FMC Fort Worth is treating his hypertension and monitoring his obesity and latent tuberculosis, as reflected in his BOP medical records. Indeed, defendant has made no showing whatsoever that he is being denied necessary treatment or prescriptions or that necessary treatment of his hypertension is being delayed in any way. *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, 470 F. Supp. 3d 489, 516 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills might impact defendant's ability to self-manage his medical conditions).

        Moreover, defendant Apodaca has not persuasively argued that he is unable to provide self-care at FMC Fort Worth—whether that means self-care in light of his medical conditions or his ability to social distance and avoid contracting COVID-19. *See Gorai*, 2020 WL 1975372, at *3 ("[T]he presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and thus the inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask and maintain social distancing is an inability to provide self–care) (citation omitted). Rather, defendant asserts in conclusory fashion

11

that "[c]onditions of imprisonment create the ideal environment for the transmission of contagious diseases." (Doc. No. 36 at 9.) In his pending motion, defendant argues that his compassionate release is warranted in light of the specific conditions he faced at CI Reeves I/II, but in his reply brief—filed a month after his transfer to FMC Fort Worth—defendant does not describe any specific conditions he currently faces at FMC Fort Worth nor does he argue that those conditions support the relief he seeks. For example, defendant does not contend that he lacks access to protective gear and cleaning and sanitizing supplies, or that he is unable to socially distance, or that he is otherwise unable to provide for his own self-care at FMC Fort Worth specifically. *See Gorai*, 2020 WL 1975372, at *3. Instead, defendant relies on FMC Fort Worth's past COVID-19 fatalities and active COVID-19 cases to argue that he "cannot properly distance and protect himself" to provide self-care. (Doc. No. 48 at 5.) Defendant Apodaca has not persuasively argued or presented any evidence establishing that the conditions he is currently facing at FMC Fort Worth render him unable to adequately provide for his self-care.

The court also notes that according to BOP's website, as of the date of this order, FMC Fort Worth reported only one inmate and no staff members with active positive tests for COVID-19. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at www.bop.gov/coronavirus/ (last visited May 27, 2021).[6] In addition, BOP's website provides data on the number of staff and inmates that have received "full inoculations" (meaning that both doses of a vaccine have been administered), and according to that data, FMC Fort Worth has 218 staff members and 944 inmates fully inoculated as of May 27, 2021. (*Id.*)[7]

In light of all of the above, the court concludes that although defendant Apodaca suffers from obesity and hypertension, both of which may place him at a higher risk of becoming

---

[6] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

[7] In light of these reported numbers and the fact that FMC Fort Worth reports a total inmate population of 1,313, it is the court's hope and expectation that defendant Apodaca has by now had the COVID-19 vaccine made available to him.

12

seriously ill if he were to be infected by COVID-19, he has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A). Therefore, his motion for compassionate release will be denied.

**C.    Consistency With the § 3553(a) Factors**

Finally, even if defendant Apodaca's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker*, 461 F. Supp. 3d at 979.

As noted above, defendant Apodaca is currently serving a 78-month sentence of imprisonment for possession with intent to distribute controlled substances.  (Doc. Nos. 20, 33.) At the time of his sentencing on February 5, 2018, defendant was found to be responsible for 25.23 pounds of methamphetamine.  (Doc. No. 20 at 5.)  With his early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 33 and that his lack of a criminal history placed him in criminal history category I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 135 and 168 months.  (*Id.* at 10.)  The defendant was found to be eligible for "safety valve" relief.  (*Id.*)  The probation officer recommended a low-end of the guideline range sentence of 135 months in BOP custody.  (*Id.*)  After considering all applicable § 3553(a) factors and the circumstances of this case, the undersigned departed and varied downward from the advisory guideline range and sentenced defendant to a 78-month term of imprisonment.  (Doc. No. 33 at 2.)

---

[8]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

1    In his pending motion, defendant argues that a sentence reduction is warranted at this time
because he has now served the majority of his sentence, specifically approximately 57 months of
his 78-month sentence, and as noted above, his current projected release date is March 27, 2022.
(Doc. No. 36 at 12.) Defendant contends that his conduct during his imprisonment shows that the
purposes of punishment have been met because he is dedicated to rehabilitation, noting that he
has received no disciplinary write-ups and has earned certificates for completing a number of
educational and drug rehabilitation programs. (*Id.* at 10–11.) Defendant also contends that his
early release will not endanger the community because he was convicted of a non-violent offense,
has no other criminal history, and was continuously employed prior to his conviction. (*Id.* at 11.)
He also notes that he has an active Immigration and Customs Enforcement detainer and plans to
live with his mother and sisters in Mexico after his release. (*Id.* at 11–12.)

The government counters that defendant's release would endanger the community and a reduction of defendant's sentence would not be consistent with consideration of the § 3553(a) sentencing factors. (Doc. No. 43 at 10–11.) The government's principal argument is that defendant was convicted for trying to sell "a significant quantity of pure methamphetamine" and had "bragged about his ability to get any amount of methamphetamine the CI [confidential informant] desired—even 100 pounds," and his release would likely result in a deportation to Mexico, "where he had a supplier of methamphetamine that could get him any amount of methamphetamine, according to [defendant]." (*Id.* at 10.) The government also notes that defendant Apodaca already received a substantial reduction in his sentence because he stipulated in his plea agreement that he would be held responsible for 25 pounds of a mixture containing methamphetamine and not pure amphetamine, the latter of which calls for a longer term of imprisonment. (*Id.* at 11.)

In his reply, defendant emphasizes his lack of criminal history and his rehabilitation efforts. (Doc. No. 48 at 8.) Defendant argues that he does not pose an undue risk to the community if released given his lack of disciplinary record and the evidence that he completed programming while incarcerated. (*Id.*)

/////

14

It is true that defendant Apodaca has no history of criminal convictions prior to his conviction in this case. (Doc. No. 20 at 7.) The court recognizes and commends defendant on his rehabilitation efforts, while noting that rehabilitation alone is generally not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3. The court also recognizes that defendant has served approximately 57 months of his 78-month custodial sentence, or approximately 73 percent. (Doc. Nos. 43 at 3; 43-1 at 3.) Nonetheless, given that the advisory sentencing guideline range called for a term of imprisonment of between 135 and 168 months, a reduction of defendant's already somewhat lenient 78-month sentence effectively to one of just 57 months would not adequately reflect the seriousness of his offense or conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota*, No. 5:15-cr-00264-LHK-1, 2020 WL 2733993, at *5 (N.D. Cal. May 26, 2020); 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Apodaca has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 34, 36) is denied.

IT IS SO ORDERED.

Dated: **May 27, 2021**

UNITED STATES DISTRICT JUDGE